IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHOWER ENCLOSURES AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:15cv627 |
| | ) | |
| BBC DISTRIBUTION CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

In its Motion to Dismiss under Rule 12(b)(1) for lack of standing, Defendant BBC Distribution Corp. argues that the plaintiff, Shower Enclosures America, Inc. cannot pursue this patent infringement matter because it doesn't actually own the asserted patent. Instead, BBC claims that a separate entity called simply "Shower Enclosures, Inc." actually owns the patent according to the assignment document allegedly conferring ownership to the plaintiff. Shower Enclosures contends that this is all much ado about nothing because the assignment contains a mere typographical error in its name that does not affect its ownership of the patent. I agree, and will therefore **DENY** the motion.

**Background**

This is a patent infringement matter in which the Plaintiff, Shower Enclosures, claims that BBC distributes a shower door that violates Shower Enclosures' patent, U.S. Patent No. 7,174,944 (the '944 Patent). According to the face of the '944 Patent, it was assigned to "Shower Enclosures, Inc., Ontario, CA (US)." (DE 15-1 at 2.) The assignment

1

itself purports to assign the '944 patent from Mike Clark and Mike Guidos, the two inventors listed on the '944 Patent, to "Shower Enclosures, Inc." located at 501 Kettering Drive, Ontario, CA, 91701. (DE 15-4 at 5–6.) That assignment was subsequently recorded in the United States Patent and Trademark Office. (*Id*. at 2.)

BBC doesn't take issue with that assignment or challenge its validity. Rather, BBC challenges whether Shower Enclosures *America*, Inc. can base a patent infringement matter on a patent assigned to Shower Enclosures, Inc. So the missing word "America" is what this dispute is about. According to Plaintiff, the entity "Shower Enclosures, Inc." has never existed as an entity related to Shower Enclosures America, Inc. In fact, Shower Enclosures submitted an affidavit by Mike Clark, one of the named inventors, who is also an officer of Shower Enclosures America, Inc. and who signed the original assignment document purporting to assign the rights of the '944 Patent to "Shower Enclosures, Inc." (DE 18-1.) According to Mr. Clark, it was his intention to assign all of the rights to the '944 Patent to his employer, Shower Enclosures America, Inc. (*Id*. at 2.) More specifically, he states that the omission of "America" from the assignment was an inadvertent error, because he and an attorney for his employer commonly used the abbreviation "Shower Enclosures, Inc." in the past. (*Id*. at 2–3, 6.)

## Discussion

A motion under Federal Rule of Civil Procedure 12(b)(1) claiming a plaintiff lacks standing should be granted only if it appears beyond doubt that Plaintiff cannot prove a plausible set of facts in support of its claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). In the context of patent infringement suits, there are two separate limitations on

2

standing: constitutional and prudential. *See Morrow v. Microsoft, Corp.*, 499 F.3d 1332, 1338–39 (Fed. Cir. 2007) (differentiating constitutional and prudential standing). "Article III standing . . . generally must be present at the inception of the lawsuit." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit." *Id.* at 1309. Defects in prudential standing, however, are not fatal to the lawsuit, and if the plaintiff had constitutional standing at the inception of the lawsuit, prudential concerns may be cured after the lawsuit is filed. *See Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005).

State law governs the question of who has legal title to a patent. *My Mail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1375 (Fed. Cir. 2007). As the parties agree, California law applies to that determination here as the assignment was executed in the state of California. Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. That intention is evaluated using an objective standard. *ASP Props. Group v. Fard, Inc.*, 35 Cal. Rptr. 3d 343 (Cal. Ct. App. 2005). A contract is ambiguous when "it is reasonably susceptible to either of the meanings urged by the parties." *Curry v. Moody*, 48 Cal. Rptr. 2d 627, 630 (Cal. Ct. App. 1995). Whether a contract is ambiguous is a question of law. *Id.* Where a contract is ambiguous, the Court may look to extrinsic evidence to ascertain the intent of the parties. *Id.*

The assignment is ambiguous because "Shower Enclosures, Inc." is reasonably

3

susceptible to the two meanings offered by the parties in this case: it could refer to "Shower Enclosures, Inc.," or it could be an abbreviated form of "Shower Enclosures America, Inc." I can look to extrinsic evidence to help resolve the ambiguity and determine the true intent of the parties. Here, one of the assigning inventors, Mike Clark, has submitted an affidavit claiming it was his intent to assign the '944 Patent to Shower Enclosures America, Inc., his employer. (DE 18-1 at 2.) According to Mr. Clark, the omission of "America" from the assignee's name was an inadvertent error. (*Id*. at 3.) Thus, the intent of the assignor was to assign the patent to the plaintiff. The question becomes whether the typographical error nullifies that assignment.

Other courts confronting this exact question have concluded that it does not. One example, *LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 211 (D. Del. 2006), presents nearly identical facts to the present matter. There, an exclusive license purported to license a patent to "Greenspan Company," whereas the entity was actually called "Greenspan Corporation." *Id*. at 213. Just as here, the defendant claimed that because the entity the patent was licensed to did not exist, the agreement conferred no rights to the plaintiff and the plaintiff therefore could not sue as the exclusive licensor. *Id*. The plaintiff claimed, however, that the error was merely typographical and supplied affidavits from the original patent holders stating that they fully intended to grant a license to the Greenspan Corporation. *Id*. at 214–15. The court found that because this extrinsic evidence demonstrated the clear intent of the parties to assign the patent to the Greenspan Corporation, and because the license was otherwise not defective, the Greenspan Corporation had standing to sue as an exclusive licensee. *Id*. at 215.

4

*LP Matthews* isn't the only case of its kind. Numerous others have held that mere typographical errors in assignments will not negate standing where the intent of the parties is clear. *Sw. eFuel Network, L.L.C. v. Transaction Tracking Techs., Inc.*, No. 2:07-CV-311, 2009 WL 4730464, at *4 (E.D. Tex. Dec. 7, 2009) (holding clerical error in name of entity receiving assignment of patent is not enough to defeat the correct entity's standing to sue where the correct officer of the organization signed the assignment and the intent of the parties was clear that the patent was to be assigned to the correct entity (collecting cases)); *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 2995997, at *4 (E.D. Tex. June 4, 2012) (allowing standing to ESS Technology International even though the patent was assigned to ESS Technologies International, where the latter did not exist and the clear intent of the parties was to assign the patent to the former); *Special Happy, Ltd. v. Lincoln Imports, Ltd.*, No. SACV 09-00074-MLG, 2011 WL 2650184, *5 (C.D. Cal. July 6, 2011) (error in patent number on assignment was not enough to defeat standing to sue); *Lincoln Imports, Ltd. v. Santa's Best Craft, Ltd.*, No. H-07-2803, 2008 WL 2754530, *2 (S.D. Tex July 4, 2008) (same); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) (finding "scrivener's error" referencing wrong patent number in a license did not negate standing to sue based on that license).

This line of cases is distinguishable from cases where plaintiffs attempt to gain retroactive standing to sue over patent infringement. In those kind of cases, the plaintiff sues an alleged infringer, but in fact a different entity is the actual assignee of the patent-in-suit (or a potential patent-in-suit). The plaintiff executes what is called a nunc pro tunc assignment—in English, a contract that goes back in time to assign the patent-in-suit to the

5

plaintiff *before* the initiation of the lawsuit, giving the plaintiff retroactive standing to sue for infringement. This is what the plaintiffs in *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998) and *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774 (Fed. Cir. 1996) did to try to gain standing. Both courts rightly rejected the ploy. *Enzo*, 134 F.3d at 1093–94; *Gaia*, 83 F.3d at 779; *accord Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 ("[J]urisdictional defect[s] cannot be cured by . . . the subsequent purchase of an interest in the patent in suit."). And both courts quoted the court in *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305 (D. Del. 1995), which warned that "[p]ermitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal." *Id.* at 310.

The difference here is that there was a written assignment in existence before the plaintiff filed suit. *See Sw. eFuel Network,* 2009 WL 4730464, at *3 ("The plaintiffs in *Enzo* and *Gaia* did not have standing to bring their respective suits because they had no rights memorialized in the patents-in-suit in a written document at the time of filing."). Shower Enclosures is not trying to retroactively gain standing after filing a complaint but is instead asserting that an assignment older than this lawsuit confers standing. Accordingly, none of the concerns from *Procter & Gamble* are present here, and I find that *Enzo*, *Gaia*, and *Schreiber* do not undermine Shower Enclosures's standing.

## Conclusion

For the reasons above, BBC's Motion to Dismiss is **DENIED**.

**SO ORDERED.**

ENTERED: May 27, 2016

                                                <u>s/Philip P. Simon</u>
                                                PHILIP P. SIMON, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT